UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONRAD J. KUYAWA,<br><br>    Plaintiff,<br><br>    v.<br><br>MERCEDES- BENZ USA, LLC, et al.,<br><br>    Defendants. | Case No. 23-cv-05712-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 12 |

This is a lemon law case brought by plaintiff Conrad J. Kuyawa against defendant Mercedes-Benz, USA, LLC ("MBUSA") for alleged violations of California's Song-Beverly Consumer Act ("the Act") Cal. Civ. Code § 1790, et seq., and the federal Magnuson-Moss Warranty Act (the "MMWA") 15 U.S.C. § 2301, et seq.  Kuyawa alleges that MBUSA violated its express warranty, implied warranty of merchantability, and duty to "repair or replace."  He also invokes the MMWA as an avenue for relief under violations of state law.  These claims fail for several reasons.  First, the Act does not create express warranty obligations that bind the original manufacturer of preowned vehicles, absent certain circumstances that are not present here.  Second, its implied warranty provision applies only to goods already covered by an express warranty.  Finally, its "repair or replace" provision also does not bind the original manufacturer of preowned vehicles (pending exceptions not alleged in the Complaint).  MBUSA's motion is GRANTED and Kuyawa's claims are DISMISSED without prejudice.

## BACKGROUND

On January 2, 2021, Kuyawa bought a used 2019 Mercedes-Benz Model S560 ("the Vehicle"), from Walnut Creek Luxury Cars, a third-party dealership that is not a party in this case. Complaint ("Compl.") [Dkt. No.1] 1, ¶¶ 2-3.  The Vehicle came with a factory warranty from Mercedes-Benz, USA.  Compl. ¶ 2.

1    Kuyawa alleges that in "late 2022 to early 2023 the Vehicle's engine began shaking and at

2 some point, the check engine light came on." *Id.* ¶ 7. At that point, he took the Vehicle to

3 Mercedes-Benz of Walnut Creek for repair, where it allegedly remained "in a state of repair" for

4 40 days. *Id.* ¶¶ 9-10. When he received the Vehicle back, "it had undergone 8 pages of what were

5 substantial repairs to the engine as well as other repairs." *Id.* ¶ 12.

6    Kuyawa alleges that the vehicle's manufacturer, defendant MBUSA, violated its

7 obligations under the Song-Beverly Act. Compl. 4-9; *see also* Pl's Opposition to Motion to

8 Dismiss ("Oppo.") [Dkt. No. 14] 6-9. Specifically, he states that MBUSA (1) breached its original

9 manufacturer's express warranty regulated by the Act, (2) breached the implied warranty of

10 merchantability created by the Act, and (3) failed to complete a specific repair or else replace his

11 vehicle within 30 days in violation of the same. *Id.* He does not allege that MBUSA stepped into

12 the role of retail seller. *See generally* Compl.; Oppo.

13    Kuyawa originally filed his complaint in Contra Costa County. *See* Compl. MBUSA

14 removed, asserting diversity jurisdiction, *see* Notice of Removal [Dkt. No. 1], and then filed a

15 motion to dismiss each of Kuyawa's claims. In the alternative, it moves to strike his third claim

16 that MBUSA failed to fulfill its "repair or replace" obligation to complete repairs on each defect in

17 a new vehicle within 30 days, or otherwise replace the vehicle or pay restitution. *Id.* 2-3, citing

18 Civil Code § 1793.2(b). *See* Motion to Dismiss for Failure to State A Claim or, In the Alternative,

19 to Strike ("Mot") [Dkt. No. 12] 1-3.

20                                **LEGAL STANDARD**

21    Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

22 if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to

23 dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

24 face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when

25 the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant

26 is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

27 omitted). This standard is not akin to a probability requirement, but there must be "more than a

28 sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require

United States District Court
Northern District of California

"heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[1] *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding pro se, the Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (citation

---

[1] Kuyawa is an attorney with his own legal practice—the Law Offices of Conrad J. Kuyawa—and lists himself a counsel. While he no doubt has greater legal knowledge and expertise than the typical pro se litigant, I will nonetheless evaluate this complaint under the relaxed standard for parties who represent themselves.

omitted).

## DISCUSSION

### I. BREACH OF EXPRESS WARRANTY

#### A. The Song-Beverly Act

The Song-Beverly Act is a remedial "lemon law" statute protecting buyers of consumer goods that were under an express warranty. *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 798 (2006). A buyer "who is damaged by a failure to comply with [The Act] ... may bring an action for the recovery of damages and other legal and equitable relief." Cal. Civ. Code § 1794(a). The MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d).

Kuyawa's first claim is that MBUSA breached its express warranty, as regulated by both the Song-Beverly Act and the federal Magnuson-Moss Warranty Act. Compl. 4-6. MBUSA moves to dismiss because preowned cars like the Vehicle do not fall under section 1793.22's definition of "new motor vehicle" as understood by California courts. Mot. 3-9; *see Rodriguez v. FCA US, LLC*, 77 Cal. App. 5th 209, 225 (2022) (finding that to plausibly allege that they purchased a "new motor vehicle," a plaintiff must allege that they purchased a vehicle that had "full express warranties" *and* had "not previously [been] sold to a consumer"); Compl. 1 (referring to the vehicle as "'pre-owned'").

MBUSA is correct. Kuyawa's claims fail because the subject Vehicle was used when he purchased it. Kuyawa argues that "even though the vehicle is used," his "allegations stem from the direct language in the warranty" and "there [was] no exception language in the warranty as to preowned vehicles." Joint Case Management Conference Statement ("Joint Stmt.") [Dkt. No. 20] 4; Oppo. 8:7-9.[2] This argument lacks merit.

---

[2] Somewhat incongruously with the rest of his argument, Kuyawa argues in his Opposition that he will determine whether the Vehicle was "new" under The Act during discovery, but he does not plead any facts from which I could reasonably infer that the Vehicle was "new" when he bought it. Oppo. 5. Instead, he pleads the mere conclusion that "[whether] the vehicle was a previously

4

As a general rule, the Act extends the same express warranty obligations of preowned vehicles to *retail sellers*, not to original manufacturers like MBUSA. *See Kiluk v. Mercedes-Benz USA, LLC*, 43 Cal. App. 5th 334, 336 (2019) ("Song-Beverly['s] … protections generally apply to sale of used goods accompanied by an express warranty, except that the distributor or retail seller is bound, as opposed to the manufacturer). Kuyawa's express warranty claim against MBUSA can survive only if the vehicle sold to him was "new" under the Act's definition. *See Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1178 (N.D. Cal. 2017) (quoting Cal. Civ. Code § 1795.5(a), and noting that "'[i]t shall be the obligation of the *distributor or retail seller* making express warranties with respect to used consumer goods (and *not the original manufacturer*, distributor, or retail seller making express warranties with respect to such goods when new) to maintain sufficient service and repair facilities [for] such express warranties'")) (emphasis added). Because Kuyawa does not allege that the Vehicle was new when he bought it, his express warranty claim fails.

*Dagher v. Ford Motor Co.* is instructive. There, the court held that the Act covers non-demonstrator vehicles sold with a balance remaining on the express warranty *only when* the vehicle has had no prior private owners. 238 Cal. App. 4th 905, 922-24 (2015).[3] The plaintiff had bought a used vehicle in a private sale with "Ford's transferable, unexpired express warranty that

---

driven but not previously sold vehicle, [] is a fact that would be ascertained in discovery." *Id.* Courts do not need to accept as true allegations that are merely conclusory or unreasonable inferences. *See Lemke-Vega*, 2023 WL 5957175, at *4; *In re Gilead*, 536 F.3d at 1055.

If Kuyawa knows of facts from which I could reasonably infer he purchased a "new" vehicle, he should make them known in his amended complaint. Otherwise, it appears clear that the Vehicle was used when he bought it, as he appears to concede in the Joint Statement submitted by the parties on January 29, 2024. *See* Joint Stmt. 4.

[3] This case narrowed the previous interpretation of the exception. In an earlier case, a court established a now overruled broad categorical exclusion of all "cars sold with a balance remaining on the manufacturer's new motor vehicle warranty" and all demonstrator vehicles as two distinct categories. *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 123 (1995) as modified on denial of reh'g (June 22, 1995). *Dagher* and several other later cases have reinterpreted this categorical exception. *See Lemke-Vega v. Mercedes-Benz USA, LLC*, No. 23-CV-01408-DMR, 2023 WL 5957175, at *3 (N.D. Cal. Sept. 12, 2023) (noting that California "[c]ourts have questioned *Jensen*'s seemingly broad holding about whether a used car can be a 'new motor vehicle' under the Song-Beverly Act and have limited its holding to its facts").

1  the private party sellers had originally been issued upon their purchase of the vehicle, new, from a
2  Ford dealer." *Id.* at 910–11.  The court found that what matters for this claim is that both the
3  original manufacturer's warranty is unexpired and neither the seller nor any other prior owners
4  were consumers.  238 Cal. App. 4th at 922; *see also Rodriguez v. FCA US, LLC*, 77 Cal. App. 5th
5  209, 220 (2022) (clarifying the *Jensen* exception for demonstrators and dealer-owned vehicles that
6  are considered "new" because they have never been previously sold to a consumer and they come
7  with full express warranties).

8        Kuyawa attempts to distinguish his case from *Dagher* and *Rodriguez* by citing a recent
9  unpublished lemon law case involving a used vehicle, *Arzeta v. McLaren Auto., Inc*.  *See* Reply 7
10  (citing *Arzeta v. McLaren Auto., Inc*., 2023 WL 8351538, at *3 (C.D. Cal. Oct. 12, 2023).  But
11  *Arzeta* is distinguishable from the facts of this case in every meaningful way.

12        In *Arzeta*, the manufacturer—McLaren Automotive, Inc.—sold Arzeta a used vehicle with
13  a "[Manufacturer's] Qualified Pre-Owned Limited Warranty" with coverage that began as soon as
14  it was purchased.  *Arzeta*, 2023 WL 8351538, at *1.  After alleged defects arose, Arzeta alleged
15  his vehicle was a "new motor vehicle" under the Act.  *Id.*  The manufacturer relied on *Dagher* and
16  *Rodriguez* to argue that the plaintiff's vehicle could not qualify as a "new motor vehicle" under the
17  Act.  *Id.* (citing *Rodriguez*, 77 Cal. App. 5th at 215).

18        The court agreed that Arzeta's case was distinguishable from *Rodriguez* because unlike
19  *Rodriguez*, in *Arzeta* "'[t]he sole issue'" was not whether the phrase "'other motor vehicle sold
20  with a manufacturer's new car warranty'" included pre-owned vehicles with some balance
21  remaining on the manufacturer's express warranty.  *Id.* (citing *Rodriguez*, 77 Cal. App. 5th at 215).
22  Arzeta claimed breach of a separate *used* car warranty—issued by the McLaren dealership—that
23  took effect when he purchased the car.  He argued that "used cars purchased from manufacturer-
24  affiliated dealers may be protected under [the Act] where the manufacturer issues a new warranty
25  with the sale of a used vehicle."  *Id*. at *1, *3.  But the court determined that the vehicle did not
26  qualify as a "new motor vehicle" under the Act, and so its "new motor vehicles" provisions would
27  not cover used vehicles with manufacturer-issued warranties.  *Id*. at *3 (citing *Kiluk*, 43 Cal. App.
28  5th at 339-40).

1     In fact, *Arzeta* further undermines Kuyawa's argument. Unlike Kuyawa, Arzeta bought his
2  used vehicle from the manufacturer itself with its used vehicle warranty, and still it was not
3  considered "new" under the Act. *Arzeta*, 2023 WL 8351538, at *3. Furthermore, the *Arzeta* court
4  concluded that the Act's scope includes only "vehicles that have never been previously sold to a
5  consumer and come with full express warranties." *Id.* Even if the Vehicle did come with a full
6  express warranty, Kuyawa has not plausibly alleged that it has never been previously sold to a
7  consumer, and so is not "new" under the Act.[4]

8     The Honorable Donna Ryu's decision in *Lemke-Vega v. Mercedes-Benz USA, LLC*
9  provides further guidance. There, Judge Ryu dismissed claims against the same defendant,
10 MBUSA, in a case involving similar facts and allegations. 2023 WL 5957175 (N.D. Cal. Sept. 12,
11 2023). The plaintiff, Lemke-Vega, purchased a vehicle from Mercedes-Benz of Walnut Creek
12 under a sales contract listing the vehicle as "used," and alleged that it was still covered under the
13 original express warranties. *Id.* at *1. She also alleged that it was "unknown" to her whether the
14 vehicle was "Certified Pre-Owned," had been a demonstrator vehicle, or had previously been sold
15 to a consumer. *Id.* She therefore "intend[ed] to conduct discovery on the vehicle's ownership and
16 registration history and amend her complaint at the time of trial in order to conform to proof." *Id.*
17 (citations omitted).

18    Judge Ryu dismissed Lemke-Vega's express warranty claim because she did not allege
19 facts from which the court could reasonably infer that she purchased a "new motor vehicle" as
20 defined under the Act. *Id.* at *3 (adopting the California Court of Appeal ruling in *Rodriguez*,
21 which held that a plaintiff must allege that she purchased a vehicle which was "not previously sold
22 to a consumer" and was sold with "full express warranties" to plead it was a "new motor vehicle")

---

[4] Concerningly, the plaintiff misquotes *Arzeta* to suggest that its reasoning was on different grounds. *Compare id.* ("'[t]he sole issue in [Rodriguez] is whether the phrase 'other motor vehicle sold with a manufacturer's new car warranty' covers sales of previously owned vehicles with some balance remaining on the manufacturer's express warranty.' That is not the case here.") (citations omitted) *with* Reply 7 ("'[t]he sole issue in [Rodriguez] is whether the phrase 'other motor vehicle sold with a manufacturer's express warranty' [sic]. *This decision illustrates that the court only determined the application of Song-Beverly when there was unclear or conflicting language in the warranty.* That is not the case here.") (emphasis added) (citations omitted). Without Kuyawa's made-upl language (italicized), this passage has little support for his claim.

7

(internal citations omitted).[5]

As was the case in *Lemke-Vega*, here Kuyawa does not contest that a third-party sold him a preowned vehicle. Compl. 1, 3 (describing the purchase of a three-year-old "'pre-owned'" Mercedes-Benz model with 13,643 miles); Joint Stmt. 4 (acknowledging that "the vehicle *is* used," and his claims instead arise from the explicit warranty's text); *see supra* n. 2. Instead, he alleges that the Act governs the terms of MBUSA's original manufacturer's warranty because the warranty language specifies the Act as governing relief for any defects without explicitly excluding preowned vehicles. Oppo. 3-4. He points out that "even though the vehicle is used, it was still under the warranty which specifically states inclusion by the Song Beverly [sic] Act … Plaintiff's allegations [therefore] stem from the direct language in the warranty." Joint Stmt. 4.

*Dagher* and *Rodriguez* together make clear that the Act regulates express warranties only for vehicles with no prior owners who were consumers. *See Dagher*, 238 Cal. App. 4th at 922; *see also Rodriguez*, 77 Cal. App. 5th 209, 220. The Act does not apply to the Vehicle. *See Johnson*, 272 F. Supp. 3d at 1179 quoting Cal. Civ. Code § 1795.5(a) (noting "[t]he plain language of the section clearly only creates obligations on behalf of 'the distributor or retail seller making express warranties with respect to used consumer goods (and *not the original manufacturer* …)")  (emphasis in original). Kuyawa points to no caselaw suggesting that the language of the manufacturer's warranty accompanying a used vehicle, sold by a third-party reseller, can supersede or otherwise overcome the limitations of the Act as recognized by California courts.[6]

Because Kuyawa's complaint fails to plausibly allege that the Vehicle is "new," and

---

[5] Lemke-Vega pointed to the "MBUSA Service Contract or Extended Warranty" in the sales contract to argue that she purchased her vehicle still under MBUSA's express warranty. *Id.* However, because her complaint did not identify MBUSA as the retail seller, she did not plausibly allege that the contract was a renewed "full express warranty" under the Act. *Id.* at *4. Her claim was dismissed.

[6] *Johnson v. Nissan N. Am., Inc.* is instructive. In *Johnson*, I dismissed a class action representative's express warranty claim because she purchased her preowned Nissan Maxima from CarMax, a third-party reseller. 272 F. Supp. 3d at 1179. Although CarMax may have extended its own express and implied warranties to her, it could not have created separate obligations on behalf of Nissan under the Act. *Id*. I granted Nissan's motion to dismiss her express warranty claim without leave to amend because any potential proper claim could be brought instead against CarMax. *Id.*

because the Act does not create any express warranty obligations the part of the original manufacturer for preowned cars like his, Kuyawa's breach express warranty claim is DISMISSED with leave to amend.

### B. The Magnuson-Moss Warranty Act

The MMWA provides that when a warrantor fails to comply with a written warranty, implied warranty, or service contract, the consumer may sue for damages and other legal and equitable relief.  15 U.S.C. § 2310(d).[7]  Kuyawa argues that MBUSA fails to meet its express warranty obligations under the MMWA.  *See* Compl. 5-6.  But it is not entirely clear from the papers how he intends to plead this claim.  He does not state specific provisions of the MMWA that he believes the defendant has violated.  *See generally* Compl.  He does quote a provision that makes clear that the MMWA "does not substitute federal law for state law of consumer product warranties, but instead supplements state law."  *See* Compl. ¶ 21.  This suggests that he intends to invoke the MMWA as a supplement to his claim under the Song-Beverly Act.  For whatever reason, MBUSA does not directly address this argument.  *See generally* Motion.

In *Lemke-Vega*, the plaintiff made a similar argument.  2023 WL 5957175, at *5.  She also did not allege that MBUSA violated any particular provision of the MMWA, but rather that any breach of an explicit or implied warranty under state law would also be a breach of the MMWA.  *Id.*  Because Lemke-Vega has failed to state claims under California's Song-Beverly Act, the court dismissed her Magnuson-Moss claim.  *Id.*

---

[7] Under the Act, a written warranty is:
> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.  15 U.S.C. § 2301(6).)

1    Here, too, Kuyawa has failed to plausibly allege his state law claims, *see supra* section I(A), *infra* sections II, III. Any supplemental federal claims under the MMWA necessarily fail. This claim is DISMISSED with leave to amend.[8]

## II. BREACH OF IMPLIED WARRANTY

In his second claim, Kuyawa insists that MBUSA's implied warranty of merchantability ran with its original manufacturer's express warranty. Oppo. 9. Citing the express warranty's language that " the *implied* warranties of merchantability and fitness for a particular purpose are limited to the duration of the [*express*] warranty," he argues that the "Act [does not] need to be used to interpret the clear language of the warranty." *Id.* (quoting Decl. Ex. 3). MBUSA counters that the Act extends liability for breach of implied warranties only to new vehicles. Mot. 12. Because Kuyawa did not purchase a new vehicle, MBUSA argues that he can find no relief under the statute. *Id.* I agree.

The Act creates an implied warranty of merchantability for all new consumer goods that lasts for the same "duration [as] an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable." Cal. Civ. Code §§ 1792, 1795.5. It then extends this implied warranty to any retail seller that makes express warranties regarding "used consumer goods ([but] *not the original manufacturer* … making express warranties with respect to such goods when new")." Cal. Civ. Code § 1795.5(a). Therefore, under the Act, "only *distributors or sellers* of used goods—*not manufacturers* of [those] goods—have implied warranty obligations in the sale of used goods." *Nunez v. FCA US LLC*, 61 Cal. App. 5th 385, 399 (2021) (emphasis added).[9]

*Johnson v. Nissan N. Am., Inc.* is once again on point. There, I dismissed a class action representative's implied warranty claim against her vehicle's manufacturer on the same grounds as

---

[8] If the plaintiff intended to plead violations of the federal statute itself rather than solely plead MMWA violations as a supplement to his state law claims, he should make as much clear if he amends his complaint.

[9] One exception to this rule occurs when a manufacturer "steps into the role of a retailer" by selling directly to the public. *See Kiluk*, 43 Cal. App. 5th at 340. But Kuyawa has not alleged that MBUSA stepped into such a role in his case.

10

I dismissed her express warranty claim. 272 F. Supp. 3d at 1179. The plaintiff had purchased a preowned vehicle from CarMax, a third-party reseller. *Id.* I determined that while *CarMax*, the distributor/seller of the vehicle, may have extended an implied warranty to her, "[the Song-Beverly Act] only creates obligations on behalf of CarMax, not on behalf of [the original manufacturer, Nissan]" for used vehicles. *Id.* Suit against Nissan did not lie.

Kuyawa's argument fails for similar reasons. He presumes that the express warranty was extended for an implied warranty to be established. See Oppo. 5. This presumption is faulty; an express warranty was not extended, as explained in section I(A) and because he has not alleged that MBUSA took on the role of retailer at any point. *See generally* Compl., Oppo; *see supra* n. 9. He also contradicts himself by alleging that he is entitled to relief under an Act while also arguing that it is unnecessary to interpret that Act. *Compare* Oppo. 9:16-20 *with Johnson*, 272 F. Supp. 3d at 1179 quoting Cal. Civ. Code § 1795.5(a) (noting "[t]he plain language of the section clearly only creates obligations on behalf of 'the distributor or retail seller making express warranties with respect to used consumer goods (and *not the original manufacturer* …)'") (emphasis in original). For these reasons, Kuyawa's breach of implied warranty claim is DISMISSED with leave to amend.

### III.   FAILURE TO REPAIR WITHIN 30 DAYS OR REPLACE

Kuyawa asserts his third claim under the Act's "repair or replace" provision, alleging that because MBUSA failed to repair his vehicle within 30 days, he is entitled to replacement or restitution. Compl. 9. MBUSA argues that Kuyawa's "repair or replace" claim should be dismissed because he does not identify a single specific defect which took more than 30 days to repair. Mot. 12-14. This is not what defeats his claim. Kuyawa's allegation that he brought the Vehicle into the Mercedes authorized repair facility for repairs, and it remained there for 40 days without full repair, *see* Compl. ¶¶ 10-13, would probably be sufficient to state a repair or replace claim were it not for the claim's other shortcomings.[10]

---

[10] MBUSA is correct that Kuyawa does not identify the specific mechanical issue that caused his engine to "shak[e] and … the check engine light [to turn] on." *See* Compl. 3. MBUSA then alleges that the Act requires a single repair attempt to take more than 30 days to complete. Mot. 13. However, it was MBUSA's certified repair shop—Mercedes Benz of Walnut Creek—that

11

This claim fails, however, because the "refund or replace" provision states that "[i]f the manufacturer or its representative in this state is unable to service or repair a *new motor vehicle* … to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the *new motor vehicle* ... or promptly make restitution to the buyer." Cal. Civ. Code § 1793.2(d)(2) (emphasis added). The repair or replace provision defines "new motor vehicle" as one "bought or used primarily for personal, family, or household purposes," including "a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty." *Dagher*, 238 Cal. App. 4th at 922 (citing Cal. Civ. Code § 1793.22(e)(2)).

California courts are clear that the Act covers non-demonstrator vehicles sold with a balance remaining on the express warranty *only when* there have been no earlier private owners in the chain of ownership. *See Dagher*, at 922. The court in *Dagher* narrowed the *Jensen* interpretation that included "a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty." 238 Cal. App. 4th at 922-24 (quoting Cal. Civ. Code § 1793.22(e)(2) and distinguishing *Jensen*, 35 Cal. App. 4th at 123). *See supra* n.3. And in *Rodriguez*, which provided the most recent harmonization of California caselaw on the issue, the court found that the phrase "other motor vehicle sold with a manufacturer's warranty" functions "as a catchall for sales of essentially new vehicles where the applicable warranty was *issued with the sale*." *Rodriguez*, 77 Cal. App. 5th at 217-23. Other courts in this district have found *Rodriguez* persuasive. *See e.g., Lemke-Vega*, 2023 WL 5957175, at *3 (adopting *Rodriguez*'s ruling); *Nilsen v. Tesla, Inc.*, No. 22-CV-07472-BLF, 2023 WL 3763811, at *3 (N.D. Cal. May 31, 2023) (same). I do as well.

---

Kuyawa alleges failed to identify the issue after 40 days. *Id.* Accepting Kuyawa's allegations as true and drawing all reasonable inferences in his favor, a court could draw the reasonable inference that a single issue may have caused this vehicle to become defective. *See Reese*, 643 F.3d at 690 and *Iqbal*, 556 U.S. at 678. Interpreting the Act to let the original manufacturer off the hook because it fails to identify whether a single issue or a sequence of different issues has caused the defect lasting more than 30 days would fatally undermine the "repair or replace" provision. *See Dagher*, 238 Cal. App. 4th at 919, quoting *Martinez v. Kia Motors America, Inc.* 193 Cal.App.4th 187, 194 (2011) (noting that "[a]s a matter of policy, '[i]nterpretations that would significantly vitiate a manufacturer's incentive to comply with [The Act] should be avoided'").

12

As previously discussed, Kuyawa has failed to plausibly allege that his vehicle was "new" as defined by the Act. He does not address the reasoning in *Jensen* or *Dagher*. *See generally* Compl. and Oppo. Just as the *Dagher* court dismissed the plaintiff's claim because preowned vehicles are not covered by the "repair or replace" provision, Kuyawa's third claim fails for the same reason. It is DISMISSED with leave to amend.

## CONCLUSION

If the allegations in Kuyawa's complaint are accurate, I am skeptical that he can amend in a way that will state a plausible claim under the Act or MMWA. But I will give him the opportunity. For the reasons stated above, MBUSA's motion to dismiss is GRANTED and Kuyawa's claims are DISMISSED with leave to amend. Kuyawa may file an amended complaint no later than 14 days from the date of this Order.

**IT IS SO ORDERED.**

Dated: March 5, 2024



William H. Orrick
United States District Judge

13